UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LOOP PAPER RECYCLING, INC., an Illinois Corporation, ) ) ) ) Plaintiff/Counter-Defendant, ) ) v. ) ) JC HORIZON LTD., d/b/a JC HORIZON, ) LTD., a California Corporation, ) ) Defendant/Counter-Plaintiff. ) ) | Case No. 08 CV 07364 |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
JC HORIZON, LTD.'S MOTION FOR SUMMARY JUDGMENT**

    Plaintiff/Counter-Defendant Loop Paper Recycling, Inc. ("Loop Paper") has sued Defendant/Counter-Plaintiff JC Horizon, Ltd. ("JC Horizon") for money damages only for allegedly breaching the parties' agreements. Under those agreements, Loop Paper's exclusive monetary remedy is liquidated damages per a contractual formula. This formula, however, is impermissibly punitive under Illinois law and unenforceable. Loop Paper thus cannot recover any damages as a matter of law, and summary judgment for JC Horizon is appropriate.

**UNDISPUTED MATERIAL FACTS**

    JC Horizon exports recycled paper, metal, and plastic products. *See* Lee Dep. at 15:17-19, 64:23-35.[1] Its president is Judy Lee ("Lee"). *Id*. at 10:8-10. One of the companies that JC Horizon bought paper from was Loop Paper, which is a paper recycling and distribution

---

[1] All exhibit references are to the exhibits attached to JC Horizon's Local Rule 56.1(a)(1)(3) Statement of Facts, filed contemporaneously herewith. All non-deposition exhibits are cited by number. All depositions excerpts are cited in the form of Name Dep. at Page : Line Number(s), except that Jeffrey Godfrey's second deposition is cited as "Godfrey Damages Dep."

company based in Chicago.  Godfrey Dep. at 19:14-16, 23:3-7; Sulli Dep. at 20:23-21:13; *see also* Ex. 2 ¶ 11.

**JC Horizon and Loop Paper Enter into Two Agreements.**

On April 19, 2008, JC Horizon and Loop Paper entered into two agreements ("Agreements"), both effective May 1, 2008.  Ex. 3; Ex. 4; *see also* Ward Dep. at 21:9-22:17; Ex. 2 at Ex. A, Ex. B.  The first agreement ("Newspaper Agreement") was for the purchase and sale of paper products called "Newspaper Number 8" and "Newspaper Number 9."  Ex. 3.  The numbers "8" and "9" refer to different qualities of newspaper as described in the Paper Stock Institute of America, Standards and Practices Circular ("Circular"), which is incorporated by reference into the Agreements.  *See id.* ¶ 1.  The second agreement, ("Mixed Paper Agreement") was for the purchase and sale of old corrugated cardboard ("OCC") and mixed paper ("MXP"), called "OCC 11" and "MXP 1," for short.  Ex. 4.  The numbers "11" and "1" are similarly taken from the Circular.  *See id.* ¶ 1.

Both agreements provided that JC Horizon was to purchase minimum quantities of product from Loop Paper each month, and both agreements purported to run for three years, or until April 30, 2011.  Ex. 3 ¶¶ 2, 3; Ex. 4 ¶¶ 2, 3.

**The Agreements Have Identical Liquidated Damages Provisions.**

The Agreements contain an identical paragraph captioned "Default/Termination":

> Only upon material breach or default of the terms of this agreement by either party and after such breach or default remains in effect for a period of thirty (30) days from the date of receipt of a written notice from the other party, the other party shall be entitled to (i) termination of this agreement and a claim for damages or (ii) abide by the terms and conditions of this agreement and claim specific performance with or without the option of damages.  In the event Buyer defaults and remains in default beyond the cure period, it is agreed and understood that **Buyer shall then pay to Seller damages calculated under the**

> *following formula: The average monthly minimum tons multiplied by $25.00 multiplied by the number of months remaining in the agreement.*

Ex. 3 ¶ 13; Ex. 4 ¶ 13 (emphasis added) (together, the "Liquidated Damages Provisions"). The parties agreed that these provisions, along with the rest of the Agreements, should be construed under Illinois law. Ex. 3 ¶ 14; Ex. 4 ¶ 14. The Agreements were drafted by Loop Paper's lawyer, Matthew Carmody. Ward Dep. at 22:18-21.

**In October 2008, Loop Paper Terminates the Agreements.**

Pursuant to the Agreements, on a month-to-month basis, JC Horizon submitted purchase orders to Loop Paper for certain amounts of each type of paper, and Loop Paper would attempt to fill those purchase orders. Sulli Dep. at 20:23-21:13.[2] By October 15, 2008, JC Horizon had not submitted purchase orders for what Loop Paper believed to be the minimum amounts JC Horizon was required to purchase for October 2008. *Id*. at 93:11-97:17; Ex. 11 at JCH 667. On that date, Sulli of Loop Paper e-mailed Lee of JC Horizon, asking whether JC Horizon was going to order paper to satisfy its obligations for that month. Sulli Dep. at 93:15-94:2; Ex. 11 at JCH 667. Sulli wrote, "I need to hear from you today in writing or I will pass this to our legal department for further action." *Id*. JC Horizon ordered some paper from Loop Paper in October, but Loop Paper found those orders to be insufficient to meet JC Horizon's obligations for that month. Godfrey Dep. at 199:8-13; Ward Dep. at 119:3-11.

JC Horizon stopped buying paper from Loop Paper by October 25, 2008, and by October 28, 2008, Loop Paper believed JC Horizon to be in default under the Agreements. Godfrey Dep. at 199:8-13; Ward Dep. at 120:14-17. Loop Paper claims it gave written notice of default to JC Horizon on or about that date. *See* Ward Dep. at 120:14-17, 140:4-8. Since October 28, 2008,

---

[2] Many events in April-October 2008 are disputed, but immaterial to this motion.

3

JC Horizon has submitted no purchase orders to Loop Paper, and Loop Paper has shipped no paper to JC Horizon. *Id*. at 127:2-8.

**Loop Paper Immediately Collects $550,000 from JC Horizon.**

Per the Agreements, at their outset, JC Horizon posted a $550,000 standby letter of credit for the benefit of Loop Paper. Ex. 3 ¶ 4; Ex. 4 ¶ 4. This letter of credit was expressly posted, in part, as a "guaranty" of Loop Paper's damages. *Id*. Between October 28, 2008, when Loop Paper believed JC Horizon to be in default, and December 24, 2008, when Loop Paper filed this lawsuit, Loop Paper drew down all $550,000. *See* Godfrey Dep. 157:11-17; Ward Dep. at 90:9-11, 104:1-19, 123:5-10; Godfrey Damages Dep. at 88:7-20; Ex.10. Loop Paper now claims this money is compensation for its damages. Godfrey Damages Dep. at 88:7-20; Ex. 10.

**Loop Paper Sues JC Horizon for Liquidated Damages.**

The only relief Loop Paper now seeks in this case is money damages based on the Liquidated Damages Provisions. *See* Ex. 1 ¶¶ 22-23, 37-38; Ex. 2 ¶¶ 26-27, 41-42; Godfrey Damages Dep. at 58:5-12, 72:15-18.[3] It has not asked for specific performance of the Agreements, nor does it seek actual damages. Ex. 2; Godfrey Damages Dep. at 51:24-52:8, 71:8-72:18. In its answer to Loop Paper's complaint, JC Horizon asserted numerous defenses, including that "Loop Paper cannot recover any damages relating to [the Agreements] because those agreements contain liquidated damages clauses that are unenforceable penalties." *See* Ex. 5 at 13 ("Seventh Defense").

---

[3] While this motion was being prepared, Loop Paper filed a Second Amended Complaint. Loop Paper was granted leave to change a single fact allegation, which it did. JC Horizon's answer to this new Complaint is due on May 10, 2011. Because JC Horizon will not have answered the Second Amended Complaint before the Court's April 25, 2011 summary judgment deadline, and because Loop Paper's causes of action and damages sought are unchanged, all cites herein are to the First Amended Complaint.

**LOOP PAPER'S DAMAGES EVIDENCE**

Jeff Godfrey ("Godfrey"), is the CFO of Draw Enterprises III, which is Loop Paper's management company. Godfrey Dep. at 7:3-9:4. Godfrey was part of the Loop Paper team that negotiated and drafted the Agreements. *Id*. at 14:11-19, 84:14-85:2. He is also Loop Paper's designated damages witness and has performed a damages analysis on behalf of Loop Paper for this case. *See* Ex. 7; Ex. 8; Ex. 9; Ex. 10; Godfrey Dep. at 93:14-19, 113:2-6; Godfrey Damages Dep. at 4:18-21, 5:16-6:24, 38:5-13, 51:10-23. Godfrey concludes that under the Liquidated Damages Provisions, Loop Paper is entitled to $3,262,500 in liquidated damages, with some minor adjustments.[4] *See* Godfrey Damages Dep. at 51:10-23, 58:5-13; Ex. 10. He testified that Loop Paper now seeks these damages "solely and exclusively." Godfrey Damages Dep. at 51:10-52:8, 58:5-12, 71:8-72:18.

**Godfrey Describes the Liquidated Damages Provisions As a "Penalty."**

In his initial damages analysis, Godfrey called the Liquidated Damages Provisions a "penalty." *See* Ex. 7 at LPR 2. Godfrey reaffirmed the punitive nature of the Liquidated Damages Provisions in his second analysis, where he referred to them as a penalties three separate times, including calling the liquidated damages formula the "Penalty Calculation Per Contract" and the formula's sum the "Total Penalty." *See* Ex. 8 at 337.

---

[4] Loop Paper uses 4,500 tons (500 tons for the Newspaper Agreement and 4,000 tons for the Mixed Paper Agreement), 29 months, and $25.00 as its inputs for the liquidated damages formulas, and multiples those three numbers together to get $3,262,500. Ex. 10. It then modifies this number by adding $515,956.22 in alleged additional damages, and deducting a "credit" of $550,000, which Loop Paper has already collected from JC Horizon by drawing down on the letter of credit. Ex. 10. As a result, Loop Paper's final *ad damnum* is $3,228,456.22, or (($3,262,500 + $515,956.22) - $550,000). *See* Ex. 10; Godfrey Damages Dep. at 89:11-90:19.

5

In his first deposition, Godfrey testified about the rationale for the Liquidated Damages Provisions' formula, which is "average monthly minimum tons multiplied by $25.00 multiplied by the number of months remaining in the agreement." Ex. 3 ¶ 13; Ex. 4 ¶ 13. He stated that the formula was designed to secure JC Horizon's performance of the Agreements:

> Q. There is a line down at the bottom of LPR2, the last line of the spreadsheet says, "Penalty ($25) For Shortfall Tons"; do you see that?
>
> A. Yes.
>
> Q. That reference to a $25 penalty is the same $25 penalty that appears in each of the contracts in the damages formula contained in the contracts, correct?
>
> A. Yes.
>
> . . . .
>
> Q. And, again, just to be clear, your reference to the $25 penalty that appears on the bottom of page LPR2 is the penalty contained in paragraph 13 of each of these contracts attached to the Complaint under the heading Default Termination; is that correct?
>
> A. Yes.
>
> . . . .
>
> Q. And did you understand that the purpose for including this $25 penalty clause was to make sure that JC Horizon purchased the paper that it was required to purchase under these contracts?
>
> A. Yes.

Godfrey Dep. at 133:17-134:2, 135:2-8, 137:13-18 (referring to Ex. 7 at LPR 2).

In his second deposition, Godfrey confirmed that the only damages Loop Paper claims are based on what he has called the "Penalty Calculation Per Contract." Godfrey Damages Dep. at 54:17-56:5, 58:5-12, 72:15-18. The "Penalty Calculation Per Contract" is the "same calculation" Godfrey used to get his final $3,262,500 damages amount, and is the basis for the $3,228,456.22 in liquidated damages Loop Paper now seeks "solely and exclusively." *Id.*

6

**Godfrey Performed Additional Simple Calculations Supposedly Showing Loop Paper's Mitigation of Damages.**

In addition to his liquidated damages calculation, Godfrey also performed an alleged mitigation analysis, in which he calculates Loop Paper's alleged "[n]et due from lost revenue." *See* Ex. 9. The "[n]et due from lost revenue," which he puts at $1,563,553.41, represents the difference between 31 months of sales at the contract prices in the Agreements and the same sales made at allegedly lower prices at which Loop Paper was forced to sell after it terminated the Agreements. *See* Ex.7; Ex. 8; Ex. 9. Godfrey claims he undertook this analysis to show that Loop Paper mitigated its damages, and has asserted that Loop Paper is seeking "solely and exclusively" liquidated damages and not the "net due from lost revenue" amount that is part of his mitigation analysis. Godfrey Damages Dep. at 58:5-12, 71:18-72:18; Ex. 9. Godfrey admits that his mitigation analysis was easily done, as it was based on "simple arithmetic calculations" of data drawn from quantitative reports that Loop Paper prepares in its ordinary course of business. Godfrey Dep. at 120:23-124:9. This mitigation analysis took Godfrey a "couple hours" to prepare. *Id.* at 123:15-21.

## ARGUMENT

Summary judgment is proper "if there is no genuine issue as to any material fact and if the moving party is entitled to judgment as a matter of law." *A.V. Consultants, Inc. v. Barnes*, 978 F.2d 996, 999-1000 (7th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). "A factual dispute is only an issue, however, if it is material to the case." *Id*. at 1000. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of judgment." *Anderson*, 242 U.S. at 248.

**I.      THE ENFORCEABILITY OF A LIQUIDATED DAMAGES PROVISION IS A QUESTION OF LAW.**

Under Illinois law, a contract provision "fixing unreasonably large liquidated damages is unenforceable on grounds of public policy as a penalty." *Raffel v. Medallion Kitchens of Minn., Inc.*, 139 F.3d 1142, 1145 (7th Cir. 1998) (citing *Telenois, Inc. v. Village of Shaumburg,* 256 Ill. App. 3d 897, 901-02, 628 N.E.2d 581, 584-5 (1st Dist. 1993)).  Because unreasonable liquidated damages provisions force parties to pay money damages in excess of the harm they may have caused, such provisions are, in effect, forfeitures, which the law "abhors." *Id*.

"Whether a contract provision is a penalty or a valid liquidated damages clause is a question of law." *Res. Tech. Corp. v. Congress Dev. Co.*, No. 03 C 2254, 2003 U.S. Dist. LEXIS 15418, at *7 (N.D. Ill. Sept. 2, 2003) (Darrah, J.).  *See also Checkers Eight, LP v. Hawkins*, 241 F.3d 558, 562 (7th Cir. 2001).  Liquidated damages clauses may be invalid as a matter of law "even if both parties are economically sophisticated." *Id.* at 563.  "Close cases will be resolved in favor of finding the disputed clause a penalty." *Energy Plus Consulting, LLC v. Ill. Fuel Co., LLC*, 371 F.3d 907, 909 (7th Cir. 2004).

**II.     THE LIQUIDATED DAMAGES PROVISIONS ARE UNENFORCEABLE PENALTIES.**

Illinois courts look to several factors in deciding whether a liquidated damages provision is an unenforceable penalty.  They are: 1) whether the damages provision is a threat to secure performance or a means to punish nonperformance on the one hand, or are an effort to compensate for actual losses on the other hand; 2) whether the amount of liquidated damages was reasonable at the time the contract was entered and bears some relation to the damages that might be incurred; and 3) whether the amount of actual damages would be uncertain or difficult

to prove. *Checkers Eight*, 241 F.3d at 562; *Res. Tech. Corp.*, 2003 U.S. Dist. LEXIS 15418, at *8. All three factors weigh against enforcement of the Liquidated Damages Provisions here.

      **A.    Loop Paper Admits the Liquidated Damages Provisions Are Penalties Designed To Secure JC Horizon's Performance.**

The first reason why the Liquidated Damages Provisions are penalties is simple: Loop Paper admits they are. Loop Paper has (1) referred to the liquidated damages formula as a "penalty" in its original answers to interrogatories; (2) reaffirmed this label in its damages calculations, where it identifies the sum of the Agreements' liquidated damages formula as the "Penalty Calculation Per Contract" and the formula's sum as the "Total Penalty"; and (3) admitted that the Liquidated Damages Provisions were a "penalty" designed "to make sure that JC Horizon purchased the paper that it was required to purchase." Ex. 7; Ex. 8; Godfrey Dep. at 133:17-134:2, 135:2-14, 137:13-18.

That the admissions come from Godfrey is particularly consequential. Not only was he part of the Loop Paper team that negotiated the Agreements, he is now Loop Paper's designated damages witness, and has testified that Loop Paper is seeking to recover damages under the Agreements' Liquidated Damages Provisions. His admissions are dispositive: the Liquidated Damages Provisions are penalties and therefore unenforceable. *See Telenois*, 256 Ill. App. 3d at 902, 628 N.E.2d at 585 (party admissions that liquidated damages provision was a "penalty" decided issue).

      **B.    The Liquidated Damages Provisions Provide an Unreasonable Windfall to Loop Paper.**

If a liquidated damages provision "is invariant to the gravity of the breach, the clause is probably not a reasonable attempt to estimate actual damages and thus is likely a penalty." *Checkers Eight*, 241 F.3d at 562. Variance is judged along multiple axes, including the relation

of the liquidated damages sum to the plaintiff's performance. *Mau v. L.A. Fitness Int'l, LLC*, No. 10 C 1411, 2010 U.S. Dist. LEXIS 119576, at *14 (N.D. Ill. Nov. 10, 2010).

The Liquidated Damages Provisions are "invariant to the gravity" of JC Horizon's alleged breach because they take no account of Loop Paper's duty to mitigate its damages. Loop Paper is asking for a liquidated recovery based on a three-year projection of harm regardless of whether it sold a single piece of paper to anyone during that time. This is a type of invariance that, in effect, abrogates Loop Paper's duty to mitigate its damages and thus provides it with an unreasonable windfall. *See A.V. Consultants*, 978 F.2d at 1001 (when liquidated damages provision compensated plaintiff for expected profit plus value of services sold, provision was an unenforceable penalty); *AAR Internat'l, Inc. v. Vacances Heliades S.A.*, 349 F. Supp. 2d 1114, 1117 (N.D. Ill. 2004) (liquidated damages provision that did not credit defendants for additional value received by plaintiff was unenforceable).

The Liquidated Damages Provisions are also unreasonable because they are disproportionate to Loop Paper's possible loss. Using Loop Paper's own numbers, Loop Paper's "net due for lost revenue" following its mitigation efforts was about $1.5 million, which is a far cry from the more than $3.2 million Loop Paper now seeks as liquidated damages. That Loop Paper has already collected $550,000 in cash from JC Horizon via letter of credit only widens the gap between the Liquidated Damages Provisions and Loop Paper's possible actual loss. In other words, the Liquidated Damages Provisions are an unreasonable measure of damages because they may cause JC Horizon to forfeit, and Loop Paper to gain as a windfall no less than $1.7 million. *See Grossinger Motorcorp, Inc. v. Am. Nat'l Bank & Trust Co.*, 240 Ill. App. 3d 737, 751-52, 607 N.E.2d 1337, 1347 (1st Dist. 1992) (purpose of damages is to place non-

breaching party in a position he would have been in had contract been performed, not to provide a windfall recovery).

The Liquidated Damages Provisions are also "invariant" to Loop Paper's level of performance. Loop Paper could seek this mandatory and exclusive remedy for *any* default by JC Horizon, even if Loop Paper did not perform. For example, if JC Horizon ordered 50% of the Agreements' minimum quantities, and Loop Paper delivered only half of what JC Horizon requested, under the Liquidated Damages Provisions, Loop Paper would still be able to seek the $3,262,500 "Penalty Calculation Per Contract" as if JC Horizon had not performed at all and Loop Paper performed fully. When a liquidated damages provision does not account for the quality of the plaintiff's performance, even if the liquidated damages are variable in time, the provision is a penalty. *See Mau*, 2010 U.S. Dist LEXIS 119576, at *14, *16-18.

      C.      **Loop Paper's Actual Damages Would Be Easily Calculable.**

Actual damages being easily calculable is an independent reason to find the Liquidated Damages Provisions unenforceable. *Res. Tech. Corp.*, 2003 U.S. Dist. LEXIS 15418, at *8. Actual damages can be easy to calculate even if an exact damage figure is not known at the time of contracting. *See M.I.G. Invs., Inc. v. Marsala,* 92 Ill. App. 3d 400, 406, 414 N.E.2d 1381, 1386 (2nd Dist. 1981) (actual damages not difficult to calculate based on available records); *Hickox v. Bell*, 195 Ill. App. 3d 976, 987-88, 988 N.E.2d 1133, 1141 (5th Dist. 1990) (actual damages not difficult to calculate when parties had access to land values and it was not difficult to calculate profits).

Loop Paper's possible actual damages are easily calculated because all data that could support an actual damages calculation is available in easily accessible documents that Loop Paper keeps in its ordinary course of business. Godfrey Dep. at 120:23-124:9. Loop Paper

keeps records of its costs to acquire goods and the sales price of those goods. *Id*. at 75:10-76:14, 115:5-20. To the extent its profit margin would be part of an actual damages calculation, that number is "very easily calculated." *Id*. at 72:22-73:1. Any damages that Loop Paper might suffer because of a breach of the Agreements can be calculated to the penny based on its own quantitative data.

Godfrey's mitigation analysis further shows that Loop Paper's actual damages are easily calculated. This analysis, which is not an actual damages calculation, but which follows a somewhat similar path, is "simple arithmetic," performed automatically by a spreadsheet. *Id*. at 120:23-124:9. Godfrey also admits that his mitigation analysis was easily done, testifying that he prepared his mitigation charts in only "a little bit of time" over "a couple hours." *Id*. at 123:15-21.

### III. BECAUSE IT CANNOT OBTAIN LIQUIDATED DAMAGES, LOOP PAPER CANNOT PROVE THE DAMAGES ELEMENTS OF ITS CLAIMS AS A MATTER OF LAW.

Damages is an essential element of a claim for breach of contract. *TAS Distrib. Co. v. Cummins Engine Co.*, 491 F.3d 625, 631 (7th Cir. 2007) ("under Illinois law, it is necessary to show damages" to maintain claim for breach of contract). Loop Paper seeks liquidated damages "solely and exclusively." Godfrey Damages Dep. at 58:5-12, 72:15-18. As shown above, the Liquidated Damages Provisions are unenforceable penalties. Because they are the exclusive basis for Loop Paper's damages in this case, summary judgment should be entered on all of Loop Paper's claims. *See TAS Distrib. Co.*, 491 F.3d at 637 (summary judgment affirmed because plaintiff "failed to show it was damaged.").[5]

---

[5] Alternatively, summary judgment on Loop Paper's claims may be entered in favor of JC Horizon based on JC Horizon's Seventh Defense, which alleges that the Liquidated

### A. Loop Paper Drafted the Liquidated Damages Provisions To Be Its Exclusive Money Damages Remedy.

Loop Paper admits that the Liquidated Damages Provision provides its sole and exclusive remedy "per the contract." Godfrey Damages Dep. at 58:5-12, 72:15-18. This admission is not surprising because Illinois law has long recognized that for a liquidated damages provision to be enforceable, it must be the exclusive money damages remedy available to the non-breaching party. *See Grossinger,* 240 Ill. App. 3d at 751-52, 607 N.E.2d at 1347. That court explained why optional liquidated damages clauses are unenforceable:

> In essence, such an optional liquidated damages provision fixes a minimum which must be paid from the buyer to the seller, but leaves the door wide open to him to prove actual damage in addition to this so[-]called liquidated damage. This is no settlement at all and it permits the seller to have his cake and eat it too.

*Id*. Thus, for a liquidated damages provision to be enforceable, the seller must give up its right to seek actual damages. *Id*.; *Berggren v. Hill*, 401 Ill. App. 3d 475, 481, 928 N.E.2d 1225, 1231 (1st Dist. 2010). *See also Energy Plus Consulting, LLC*, 371 F.3d at 909; *Res. Tech. Corp.*, 2003 U.S. Dist. LEXIS 15418, at *8.

This is exactly what Loop Paper admits it did. By using the verb "shall pay" to make the liquidated damages formula compulsory, its lawyer drafted the Liquidated Damages Provisions to be Loop Paper's exclusive money damages remedy. If Loop Paper seeks money damages for JC Horizon's default, the only damages Loop Paper can seek are those available under the Liquidated Damages Provisions. *See Res. Tech. Corp.*, 2003 U.S. Dist. LEXIS 15418, at *16-17 (liquidated damages provision that used the verb "shall" was "mandatory"). Loop Paper has

---

Damages Provisions are unenforceable penalties.

13

followed though on its contractual intent by asking now for damages under the Liquidated Damages Provisions "solely and exclusively." Godfrey Damages Dep. at 58:5-12, 72:15-18.

The downside for Loop Paper, of course, is that the Liquidated Damages Provisions could be unenforceable penalties, which would leave Loop Paper without a money damages remedy. To hedge against that risk, Loop Paper gave itself another remedy in the Agreements: specific performance. *See* Ex. 3 ¶ 13; Ex. 4 ¶ 13. This is permitted by Illinois law, which requires that a liquidated damages provision be the exclusive *money damages* remedy, but permits sellers to retain rights to equitable remedies in the alternative. *See Berggren*, 401 Ill. App. 3d at 481, 928 N.E.2d at 1230 (even with exclusive liquidated damages clause, contract can permit "injunctive relief").

**B.     Loop Paper Wed Itself to the Liquidated Damages Provisions When It Decided Not To Seek Specific Performance.**

As it long ago had the right to do, Loop Paper made a choice between liquidated damages and specific performance, and chose the former as its exclusive remedy. It now must live with that choice. This Court should not offer Loop Paper a lifeline by striking down the Liquidated Damages Provisions but permitting Loop Paper to seek other types of money damages at trial. Rather, Loop Paper gave up its right to other forms of money damages when it drafted the Agreements, elected Illinois law to govern them, and sought liquidated damages and not specific performance.

Put differently, Loop Paper had a choice to make when it believed JC Horizon to be in default on the Agreements. It could have sought specific performance, or it could have terminated the Agreements and sought liquidated money damages. Loop Paper chose the latter, though not until it collected $550,000 in cash from JC Horizon via a letter of credit. In effect,

14

Loop Paper gambled that its exclusive money damages remedy, the Liquidated Damages Provisions, would be enforced.  This Court should not bail Loop Paper out of its failed gamble by permitting it to ask a jury for some other form of relief.  This would be granting Loop Paper the opportunity to "have its cake and eat it too," which is the precise result barred by *Grossinger*.

## CONCLUSION

JC Horizon's motion for summary judgment should be granted.

                Respectfully submitted,

**JC HORIZON LTD., d/b/a JC HORIZON LTD.**

Dated:  April 25, 2011

    /s/   Adam N. Hirsch
One of Its Attorneys

Alan R. Dolinko
Adam N. Hirsch
Ann Megan O'Malley Chessare
ROBINSON CURLEY & CLAYTON, P.C.
300 South Wacker Drive, Suite 1700
Chicago, Illinois 60606
(312) 663-3100 – Telephone
(312) 663-0303 – Facsimile
adolinko@robinsoncurley.com
ahirsch@robinsoncurley.com
mchessare@robinsoncurley.com

15

## **CERTIFICATE OF SERVICE**

  Adam N. Hirsch, an attorney, certifies that he shall cause to be electronically filed with the Clerk of the United States District Court for the Northern District of Illinois, Eastern Division, **MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT JC HORIZON, LTD.'S MOTION FOR SUMMARY JUDGMENT**, using the ECF/CME system, which shall send notice of such filing to all counsel of record.


                /s/ Adam N. Hirsch